IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO MEREL,<br><br>    Petitioner,<br><br>  vs.<br><br>ANTHONY HEDGPETH, Warden,<br><br>    Respondent. | No. C 10-05077 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

    Petitioner has filed a pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction from Alameda County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

**PROCEDURAL BACKGROUND**

    On April 1, 2003, an information was filed, charging Petitioner, and co-defendants Michael Magidson and Jason Cazares, with first degree murder. A jury trial began on March 15, 2004, and ended in a mistrial on June 22, 2004, due to the jury's failure to reach a verdict.

    In 2005, a second jury trial began, and Petitioner and Magidson were

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

ultimately convicted of second degree murder. Pet. at 3. The jury found not true the hate crime allegation. Id. The jury did not reach a verdict as to Cazares.[1] The state trial court sentenced Petitioner to a term of fifteen years to life in state prison. Id. at 4.

On May 13, 2009, the state appellate court affirmed the judgment. Resp. Ex. 6. On August 19, 2009, the California Supreme Court denied review. Resp. Ex. 8.

Petitioner filed this instant petition for a writ of habeas corpus on November 9, 2010.

## DISCUSSION

A. <u>Factual Background</u>

The following facts are summarized from the opinion of the California Court of Appeal. Resp. Ex. 6. The defendants – Petitioner, Magidson, and Cazares – along with Jaron Chase Nabors,[2] were friends who had discussed the possibility that Lida Araujo, the 17-year old victim, was a man. The victim was described as being pretty, flirtatious, and often acted in a sexually suggestive manner. During the summer of 2002, the victim began hanging out at Petitioner's house with Petitioner, Magidson, Cazares, and Nabors. A few weeks before the victim's death, Petitioner and Magidson had engaged in oral and anal sex with the victim.

One night, in October 2002, Petitioner, Magidson, Cazares, and Nabors went to a bar to have drinks. They returned to Petitioner's house around 1:30 a.m. On the way to the house, they talked about whether the victim would be at Petitioner's house, and someone suggested that if she was, they could ask her if she was a man or a woman. The victim was at Petitioner's house when they all arrived, and at some

---

[1] Cazares subsequently pleaded no contest to voluntary manslaughter. Resp. Ex. 6 at 2, n.1.

[2] Nabors was initially charged with murder and a hate crime allegation, however, he pleaded guilty pursuant to a plea agreement, to voluntary manslaughter, in exchange for his testimony against defendants. Resp. Ex. 6 at 1, n.1.

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

2

point during the night, Petitioner confronted the victim, asking her if she was a man or a woman. The victim attempted to evade the question. Eventually, the group discovered that the victim was anatomically male.

After the discovery, Magidson attempted to choke the victim several times, and would not allow her to leave the house. Petitioner struck the victim on the top of her head with a can of food, hard enough to dent the can. Petitioner also hit the victim in the head with a frying pan, at which point, the victim fell to the floor. Cazares and Nabors left the house to get shovels. When they returned, the victim had blood on her face, but was alive and sitting on a couch. After some encouragement from Cazares and Nabors, Magidson hit the victim twice in the face with a closed fist. After she dropped to the floor, he kneed her twice in the face with a great deal of force. Magidson used a rope to tie the victim's wrists and ankles and placed her on a blanket. She appeared to be unconscious. Magidson, Nabors, and Cazares carried the victim to the garage. Petitioner remained in the living room to scrub the blood off the carpet. At some point, Magidson, Cazares, Nabors, and Petitioner got into a truck, found an area off an unpaved road, and dug a hole. When they finished digging, Magidson dragged the victim's body out of the truck and into the grave. All four men filled the grave with rocks and dirt.

At trial, an expert testified that the cause of death with asphyxia due to strangulation, associated with blunt trauma to the head. There were two lacerations on the upper forehead, with hemorrhaging inside the scalp. The blows were caused by a hard, blunt object.

B.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any

claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable

1    application" inquiry should ask whether the state court's application of clearly
2    established federal law was "objectively unreasonable." <u>Id.</u> at 409. The federal
3    habeas court must presume correct any determination of a factual issue made by a
4    state court unless the petitioner rebuts the presumption of correctness by clear and
5    convincing evidence. 28 U.S.C. § 2254(e)(1).

6    The state court decision to which Section 2254(d) applies is the "last
7    reasoned decision" of the state court. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-
8    04 (1991). When there is no reasoned opinion from the highest state court
9    considering a petitioner's claims, the court "looks through" to the last reasoned
10   opinion. <u>See</u> <u>id.</u> at 805.

11   The Supreme Court has vigorously and repeatedly affirmed that under
12   AEDPA, there is a heightened level of deference a federal habeas court must give to
13   state court decisions. <u>See</u> <u>Hardy v. Cross</u>, 132 S. Ct. 490, 491 (2011) (per curiam);
14   <u>Harrington v. Richter</u>, 131 S. Ct. 770, 783-85 (2011); <u>Premo v. Moore</u>, 131 S. Ct.
15   733, 739-40 (2011); <u>Felkner v. Jackson</u>, 131 S. Ct. 1305 (2011) (per curiam). As the
16   Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential
17   standard for evaluating state-court rulings' and 'demands that state-court decisions
18   be given the benefit of the doubt.'" <u>Id.</u> at 1307 (citation omitted). With these
19   principles in mind regarding the standard and limited scope of review in which this
20   Court may engage in federal habeas proceedings, the Court addresses Petitioner's
21   claims.

22   C.    <u>Claims and Analysis</u>

23   Petitioner claims that he was denied due process because the prosecutor failed
24   to move to dismiss the murder charges, and opposed Petitioner's post-trial motion to
25   reduce the verdict to voluntary manslaughter even though the prosecutor viewed
26   Petitioner's role in the crime as less culpable than the others.

27   In support of this claim, Petitioner relies on the prosecutor's statements

28

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

5

during opening and closing arguments. Petitioner argues that during the prosecutor's opening statement, he pointed out that Petitioner initially agreed to let the victim leave the house, and urged her to go because "they are pissed off." RT 58-59. During closing argument, the prosecutor repeatedly stated that he did not believe all three defendants had the same level of culpability.

> My theory in this case is and has always been that Defendant Magidson killed the decedent. My theory has always been and remains that Mr. Cazares, his participation as an aider and abettor, unambiguous that he had very little physical contact with the victim, but that he went to his house to retrieve the shovels for purposes of burying someone who was at that point not yet dead.
>
> [Petitioner's] liability flows from, I believe, primarily what happened with this can and pan. There was a threat that the evidence indicates was made earlier to, I believe, the effect of kill the bitch if it's a man, or something like that. But I realize that [Petitioner] made efforts after that point in time to get the victim out of the house, and so the question is, I believe, for the jury in terms of his liability at the time he struck the victim with the can and pan, did he do so as an aider and abettor to the victim's ultimate killer? And I believe that [defense counsel's] theory in this case that his client is not guilty of homicide, but is at most guilty of a 245.
>
> . . .
>
> So as I view these defendants and their liability relative to each other. To me, it's just inappropriate, although I'm not obligated – my sense of justice and fair play is such that I believe that [Petitioner] is entitled to a 245 instruction, and frankly, more so than just my sense of justice towards what's right for him, but the jury very well may find that he did not have the requisite mental state of an aider and abettor at the time he struck the victim with the pan and can. They may find he did so independent of the actions of other, and he should be criminal responsibility for that ability.
>
> And so that if they believe he was not an aider and abettor in the killing, he should nonetheless suffer the just and appropriate consequence, and that would result, if the jury had the option of finding him guilty, of the lesser.
>
> . . .
>
> And I will tell you – I'll tell you this: I see all – don't see the defendants all the same way. This man here, [Petitioner], tell you right at the very beginning, I don't see [Petitioner], whatever he is, I don't see him as a killer, and that's a question that you will be asked to determine when it comes to [Petitioner] is, whatever he

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

6

    did, when you figure out what he did, you'll have to ask yourselves if what he did, he did in order to help, to assist in some fashion, to facilitate, to encourage, to aid the killers.

. . .

    I'm asking you to convict the killer of first degree murder. I'm asking you to convict his helper of first degree murder. But first and foremost, I'm asking you to convict him of murder. I think the evidence is overwhelming, supports first degree murder, but should you disagree about whether it's first or second, if you all agree on murder, I'm asking you to convict him of murder. And I'm going to leave [Petitioner's] fate in your hands. I'm going to suggest that you do what you think is right, that you look at the evidence, you look at the law, and you return the verdict that you feel is just and appropriate.

. . .

    So I ask you to base your decision on the evidence, and as I requested in the beginning, I request now on behalf of the People, I ask you to find Mr. Magidson guilty of first degree murder. I ask you find Mr. Cazares guilty of first degree murder. And I leave it up to you to do what you believe is right as to [Petitioner.] Take a look at the evidence, take a look at the law, and return the verdict that you believe is just and appropriate in [Petitioner's] case. Look into your – look into your hearts and decide what is right. You know what is right.

RT 4851-52, 4863-64, 4890, 5164, 5167.

    The state appellate court rejected this claim, explaining:

    [Petitioner] contends he was deprived of due process because the prosecutor did not ask for a murder verdict against him yet failed to dismiss the murder charge. He points out that although the prosecutor argued that he should be treated differently from the other participants in the killing, he in fact received harsher treatment than two of them – Nabors and Cazares, who received prison terms of 11 years and 6 years respectively after pleading to voluntary manslaughter. [Petitioner] complains that the prosecutor "allowed" him to stand convicted of the same offense as Magidson and to receive a harsher sentence than Cazares, whom the prosecutor had indicated he believed were more culpable than Merel.

    [Petitioner] points out that the prosecutor's duty is not simply to obtain a conviction, but to act as a guardian of the defendant's constitutional rights and that the prosecutor has a duty not to bring or maintain charges that are not supported by probable cause. (People v. Trevino (1985) 39 Cal.3d 667, 681, disapproved on another ground in People v. Johnson (1989) 47 Cal.3d 1194, 1221; see also People v. Hill (1998) 17 Cal.4th 800, 820). Here, of course, we have already concluded that there was

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

7

substantial evidence to support the verdict of second degree murder against [Petitioner]. In the circumstances, we cannot conclude that the charge was not supported by probable cause.

We also reject [Petitioner]'s contention that the prosecutor should have taken the option of a murder verdict out of the jury's hands because he "invited" the jury to return a lesser verdict. As the portions of the closing arguments discussed above show, it is certainly correct that the prosecutor indicated that he believed [Petitioner]'s culpability was different than that of Magidson and Cazares. However, he did not tell the jury he did not believe the evidence would support a murder verdict, instead stating that he was leaving to the jury the question of whether [Petitioner] intended by his actions to aid or encourage Magidson and Cazares. If he aided and abetted the commission of a crime, as the jury was instructed, he would also be guilty of that crime. (See Joiner, supra, 84 Cal.App.4th at pp. 966-967.) The fact that the prosecutor indicated that the jury might also conclude [Petitioner] was guilty only of assault with a deadly weapon does not mean he believed the evidence would not support a conviction of murder.

[Petitioner]'s reliance on People v. Alverson (1964) 60 Cal.2d 803 (Alverson), does not persuade us otherwise. In Alverson, three defendants were tried for burglary. One of them, Williamson, testified that he had driven the getaway car, but that he did not know of the burglary until the other two defendants got into the car, told him they had burglarized a store, and advised him to drive away. (Id. at p. 804.) At trial, the prosecutor asked the jury to believe Williamson, to acquit him, and to convict the other two defendants. In doing so, he told the jury that he believed Williamson was telling the truth and did not think he was guilty of the charge, and said that his duty as a prosecutor was not to convict innocent people, but to convict the guilty. (Id. at pp. 805-806.) The jury acquitted Williamson and found his codefendants guilty. (Id. at p. 804.) One of the codefendants appealed, and our Supreme Court reversed. (Id. at pp. 804, 810.) The court concluded that the prosecutor's statement that he believed Williamson was innocent and did not want to convict an innocent man amounted to a statement that he personally believed the codefendants were guilty, and that such a statement constituted reversible misconduct. (Id. at p. 808.) The court stated that the prosecutor could have used other procedures once he became convinced of Williamson's innocence, such as moving for a mistrial or for dismissal of the case against Williamson. (Id. at pp. 806-807.) This precedent, however, is not controlling here. The court in Alverson concluded that the statements in question were unfair to the other defendants, not to Williamson. More importantly, unlike the prosecutor in Alverson, the prosecutor here did not proclaim any belief that Petitioner was innocent of murder and should be acquitted.

Finally, we reject [Petitioner]'s contention that the prosecutor improperly "allowed" the jury to convict him of the same offense as Magidson and "allowed" the court to impose the

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

8

> same sentence on the two men. The prosecutor asked the jury to find Magidson and Cazares guilty of first degree murder, but the jury declined to do so, finding Magidson as well as [Petitioner] guilty of second degree murder and failing to reach a verdict as to Cazares. As we have discussed, the evidence supported the verdict against [Petitioner]. After two mistrials as to Cazares, the district attorney accepted his plea of voluntary manslaughter and agreed to the midterm sentence. (§ 193, subd. (a).) The trial court imposed the sentence required by law on [Petitioner] and Magidson. (§ 190, subd. (a).) We cannot infer from the prosecutor's partial success that he violated his professional responsibilities or that [Petitioner] was deprived of due process, and we certainly cannot blame him for the sentence.
>
> [Petitioner] argues, however, that the prosecutor's failure to concur with his posttrial request to reduce the verdict to voluntary manslaughter deprived him of his due process right to a fair trial. According to [Petitioner], the prosecutor had an ethical duty to concur in his motion, particularly after allowing Cazares to plead no contest to voluntary manslaughter with an agreed-upon sentence of six years. He relies upon People v. Sherrick (1993) 19 Cal.App.4th 657, 660, which states: "'To the extent the prosecutor becomes involved in the sentencing process, he or she should seek to assure that a fair and informed judgment is made on the sentence and to avoid unfair sentence disparities.'" We see no violation of this rule here. Whatever the prosecutor's view of Cazares's guilt, the jury was unable to reach agreement on the issue. We see no impropriety in the district attorney's recognizing the difficulty in obtaining a conviction of Cazares and agreeing to a plea bargain. Nor do we see any impropriety in the prosecutor accepting the jury's verdict against [Petitioner], one that was supported by the evidence.

Resp. Ex. 6 at 25-28.

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

It is important to remember that "[t]his is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, or in which the prosecutor's remarks so prejudiced a specific

1  right, such as the privilege against compulsory self-incrimination, as to amount to a
2  denial of that right." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)
3  (prosecutorial misconduct claim when prosecutor commented about respondent's
4  expectations at trial) (citations omitted). "When specific guarantees of the Bill of
5  Rights are involved, this Court has taken special care to assure that prosecutorial
6  conduct in no way impermissibly infringes them." Id. Here, however, the claim is
7  only that a prosecutor's failure to dismiss the murder charges or support Petitioner's
8  motion to reduce the conviction so infected the trial with unfairness as to make the
9  resulting conviction a denial of due process. See Ortiz v. Stewart, 149 F.3d 923, 934
10 (9th Cir. 1998).

11  There is no evidence that the prosecutor's failure to dismiss the murder
12 charges or support Petitioner's motion for a reduction of his conviction resulted in
13 an unfair trial. Petitioner does not challenge the state appellate court's conclusion
14 that there was sufficient evidence to support his conviction of second degree murder.
15 During closing argument, the prosecutor expressed his personal belief regarding the
16 culpability of Petitioner, but also made it clear that the jury had the ultimate fact-
17 finding duty to apply the law in order to determine whether Petitioner had the
18 requisite intent sufficient to sustain a murder conviction. In other words, despite the
19 prosecutor's personal belief regarding Petitioner's level of culpability, the jury
20 rejected that belief, and found sufficient evidence to convict Petitioner of second
21 degree murder. In light of the record, there is no indication that the failure to
22 dismiss the murder charges, or to support Petitioner's motion to reduce his
23 conviction, resulted in an unfair trial or denied Petitioner his right to due process.

24  Moreover, this Court has no authority to review questions of state
25 prosecutorial discretion unless Petitioner has made a prima facie case that the
26 prosecutorial decision was constitutionally impermissible. See United States v.
27 Diaz, 961 F.2d 1417, 1420 (9th Cir. 1992). To establish a prima facie case of
28

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

selective prosecution, the claimant must show that the prosecutorial policy (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. See United States v. Armstrong, 517 U.S. 456, 465 (1996). Courts presume that prosecutors have properly discharged their official duties. See id. at 464. Here, Petitioner makes no such showing that the prosecutor's failure to dismiss the murder charge or support his motion for reduction in the conviction was motivated by any discriminatory purpose. Cf. United States v. Redondo-Lemos, 955 F.2d 1296, 1300 (9th Cir. 1992) (recognizing that while a completely arbitrary system of deciding whom to prosecute may violate due process, in the absence of discriminatory motive and effect, such a violation has no judicial remedy).

Finally, to the extent Petitioner alleges that the prosecutor failed to discharge an ethical duty, the Court recognizes that a person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In other words, "it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010). The Supreme Court has repeatedly held that federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. See Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (2011). It is unavailable merely because "something in the state proceedings was contrary to general notions of fairness or violated some federal procedural right unless the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in state court." Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). Even assuming that the prosecutor failed to uphold a state ethical duty, this failure is insufficient to warrant federal habeas relief.

Thus, this Court concludes that Petitioner has not demonstrated that the state

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

court decision was contrary to, or an unreasonable application of, clearly established Supreme Court law.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus is **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

SO ORDERED.

DATED: 9/25/2012

EDWARD J. DAVILA
United States District Judge

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.10\Merel05077_deny petition-coa.wpd

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JOSE ANTONIO MEREL,

    Petitioner,

v.

ANTHONY HEDGPETH,

    Respondent.
_____/

Case Number: CV10-05077 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  9/26/2012 , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jose Antonio Merel
F 18721
Salinas Valley State Prison
Post Office Box 705
Soledad, CA 93960-1050

Dated:  9/26/2012

Richard W. Wieking, Clerk
/s/ By: Elizabeth Garcia, Deputy Clerk